**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MELISHA JOHNSON,**

      **Petitioner,**

**v.**                                     **Case No. 4:13cv538-WS/CAS**

**J.V. FLOURNOY, Warden,**
**Federal Correctional Institution,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2241 PETITION

On or about September 24, 2013, Petitioner Melisha Johnson, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  On February 4, 2014, Respondent filed an answer, with attachments.  ECF No. 7.  Petitioner filed a response on March 26, 2014.  ECF No. 11.  Respondent filed a reply to the response on April 28, 2014.  ECF No. 13.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned concludes that Petitioner has not demonstrated entitlement to relief under § 2241 and, accordingly, her petition should be denied.

## Background

In April 2011, in the United States District Court for the Southern District of Georgia, the Government filed a single-count information charging Petitioner Melisha Johnson with the offense of wire fraud, in violation of 18 U.S.C. § 1343.  United States v. Johnson, Case No. 1:11cr136-DHB, ECF No. 1 (S.D. Ga. April 5, 2011).  Johnson signed a written plea agreement and pled guilty to the charge.  *Id.* ECF Nos. 15, 16. A plea hearing took place on May 4, 2011, *id.* ECF No. 37, and a sentencing hearing took place on August 31, 2011, *id.* ECF No. 110.  The district judge adjudicated Johnson guilty and sentenced her to 144 months in prison, followed by 3 years of supervised release.  *Id.* ECF No. 22; *see* ECF No. 7 Attach. 1.  Johnson did not appeal.

Johnson filed this § 2241 petition on September 24, 2013, while incarcerated at the Federal Correctional Institution in Tallahassee, Florida. ECF No. 1.[1]  She seeks credit for time spent in jail from May 21, 2010, to June 24, 2012.  *Id.* at 5.

---

[1]Petitioner Johnson is now confined at the Federal Correctional Institution in Aliceville, Alabama.  ECF No. 20.  Because she filed her § 2241 petition in this Court while incarcerated within the Northern District of Florida, her prison transfer does not deprive this Court of jurisdiction.  *See* Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004).

Respondent has filed an answer, with attachments.  ECF No. 7. Respondent asserts Johnson has not exhausted her administrative remedies.  *Id.* at 3.  Respondent attaches the Declaration of Joksan Morgan in support of this assertion.  *Id.* ECF No. 7-2.  Respondent also states the time at issue was already credited to Johnson's state sentence served in Georgia and cannot be credited on her federal sentence.  ECF No. 7 at 1.  Respondent attaches the Declaration of Kellen Jean Goulet, in support of its position.  *Id.* ECF No. 7-1.

In her response, Johnson states she received her federal sentence first.  ECF No. 11 at 1.  She states that, on December 9, 2011, she received a 12-year sentence by the Baldwin County Superior Court Judge, to run concurrent with her federal sentence and she received credit for time served.  *Id.*  She was then placed in the custody of the Georgia Department of Corrections (GDOC).  *Id.*  She further states that on June 4, 2012, she "went back into the custody of Baldwin County and her sentence was modified to time served" and "[e]ven after that order, Petitioner remained in GDOC custody until July 2, 2012."  *Id.* at 2.  She states she should have been released from state custody on December 9, 2011.  *Id.*  She cites 18

U.S.C. § 3585(b) and asserts she "should be able to receive credit from

May 21, 2010 through June 27, 2012." *Id.*

In its reply, Respondent maintains that Petitioner Johnson's sentence

has been properly calculated.  ECF No. 13.  Respondent explains that the

BOP has gone through all the factors and determined a *nunc pro tunc*

designation was not appropriate.  *Id.* at 3.  As part of that determination,

the BOP asked the sentencing judge if his intent was for Johnson's

sentence to run concurrent with the state sentence, and that court

responded that was not the judge's intent.  *Id.* at 3-4.

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue

the writ of habeas corpus.  *See* United States v. Hayman, 342 U.S. 205

(1952).  The habeas remedy is now codified in 28 U.S.C. § 2241,

subsection (c)(3) of which provides that the writ of habeas corpus shall not

extend to a prisoner unless the prisoner is "in custody in violation of the

Constitution or laws or treaties of the United States."  As noted in Hayman,

prisoners must bring habeas corpus applications in the district of

confinement.  342 U.S. at 213.  Because courts with federal prisons in their

jurisdictional boundaries became inundated with habeas petitions, and

because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted § 2255 of Title 28.  *See* Hayman, 342 U.S. at 212–14, 218.

The language of § 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving § 2241 available to challenge the continuation or execution of an initially valid confinement.  *See* Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351–52 (11th Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence). Thus, § 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention.  *See* Antonelli, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir.

2000) (petition challenging BOP's administration of service credits,
including calculation, awarding, and withholding, involves execution rather
than imposition of sentence, and thus is matter for habeas corpus).

In this case, Johnson's § 2241 petition challenges the execution, or
calculation, of her sentence.  ECF No. 1.  Specifically, she takes issue with
the decision of the BOP not to allow her credit for time spent in jail from
May 21, 2010, to June 24, 2012.  *Id.* at 5.

The U.S. Attorney General, acting through the BOP, administers a
federal defendant's sentence and initially has the exclusive authority to
determine when a federal sentence commences and to compute sentence
credit awards after sentencing.  18 U.S.C. §§ 3585(a), 3621(b); United
States v. Wilson, 503 U.S. 329, 335 (1992); Rodriguez v. Lamar, 60 F. 3d
745, 747 (11th Cir. 1995).  After a petitioner exhausts administrative
remedies with the BOP, the district court may review the constitutionality of
the BOP's decision and statutory construction.  *See* Rodriguez, 60 F. 3d at
747.  "[I]f congressional purpose is clear, then interpreting courts and
administrative agencies 'must give effect to the unambiguously expressed
intent of Congress.'"  *Id.* (quoting Chevron U.S.A. Inc. v. Natural Resources
Defense Council, Inc., 467 U.S. 837, 843-43 (1984)).  If the statutory

provision is silent or ambiguous, the court must defer to the agency's

reasonable interpretation unless the interpretation is "arbitrary, capricious,

or manifestly contrary to the statute.'"  *Id.* (quoting <u>Chevron</u>, 467 U.S. at

844).

Petitioner Johnson indicates that she presented her claim to the BOP

and explains:  "cannot make a decision at Institution level."  ECF No. 1 at 3.

She attaches a copy of her administrative remedy request received

September 5, 2012, with remedy ID 703515-F1.  *Id.* at 7.  She attaches a

response dated September 10, 2012, from Warden Flournoy, with the

same ID number, which provides:

> This is in response to your Request for Administrative Remedy
> No. 703515-F1, received September 5, 2012, wherein you
> request your additional jail credit from May 21, 2010, through
> June 24, 2012, applied to your federal sentence.
>
> A review of records and consultation with staff revealed you
> were sentenced in the United States District Court for the
> Southern District of Georgia on August 31, 2011, to a term of
> 144 months.  Your federal sentence commenced on June 28,
> 2012, upon completion of a term of imprisonment with the
> Georgia Department of Corrections, and you were awarded 4
> days of prior custody credits.
>
> Sentence computations are a function of the Designation and
> Sentence Computation Center located in Grand Prairie, Texas,
> and cannot be addressed at the institution level.

Accordingly, this response to your Request for Administrative Remedy is provided for informational purposes only, in that changes to sentence computations are not authorized at the institution level. **If dissatisfied with this response, you may appeal to the Regional Director, Southeast Regional Office, 3800 Camp Creek Parkway, S.W., Building 2000, Atlanta, Georgia 30331. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.**

*Id.* at 8. She also attaches copies of "Extension of Time for Response - Administrative Remedy," dated April 1, 2013, for Remedy ID 703515-R4, *id.* at 9, and dated July 31, 2013 for Remedy ID 703515-A2, *id.* at 10, as well as a "Receipt - Administrative Remedy", *id.* at 10, acknowledging receipt of the Central Office Appeal for Remedy ID 703515-A2.

Respondent asserts Johnson has not exhausted her administrative remedies and attaches the Declaration of Joksan J. Morgan. ECF No. 7 at 3 and 7-2. In the declaration, Morgan states:

2. Through the Bureau of Prisons' Administrative Remedy Program (ARP) inmates may seek formal review of issues relating to any aspect of their confinement. Through the ARP, an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. If informal resolution is not possible, or an inmate is dissatisfied with the result, he may file a formal written administrative remedy request to the Warden (BP-9). If not satisfied with the Warden's response, an inmate may submit an appeal to the Regional Director (BP-10). If not satisfied with the

Regional Director's response, an inmate may appeal to the General Counsel's Office in Washington, DC (BP-11).

3.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.  The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.  28 C.F.R. § 542.14.  Inmates may file appeals of a Discipline Hearing Officer's decision by filing directly with the Regional Director.

4.  The Bureau of Prisons maintains a computerized database, SENTRY, which contains information about inmates confined within the Federal Prisons System.  SENTRY is used to track all BP-9, BP-10, and BP-11 data (hereinafter referred to collectively as "administrative remedies") filed by Bureau of Prisons' inmates.

. . . .

7.  Based on my review of the Bureau's computerized records system SENTRY, I have confirmed the following:

    • Petitioner initially filed a BP-9 at the institution level on September 5, 2012, wherein she sought prior jail credit. That remedy was given remedy number 703515-F1, and the institution responded to it with an explanation.

    • Petitioner then filed a BP-10 appeal at the Regional level which was initially rejected three times due to Petitioner's failure to follow proper procedures (remedies 703515-R1, R2, R3).  Petitioner was given opportunities to cure the defects, and finally on March 1, 2013, Petitioner's BP-10 was accepted (703515-R4) but the Region did not respond to the remedy.

• Pursuant to policy, after not having received a response within the time allotted, Petitioner was able to file her BP-11 at the Central Office level.  On June 26, 2013, she submitted a BP-11 appeal, which was rejected because she did not follow the procedures and submit the proper continuation papers.  She was advised of such and given an opportunity to correct the defect.

• On July 22, 2013, Petitioner re-submitted her BP-11 (703515-A2), which was accepted in error and voided. On that same date remedy 703515-A3 was entered in and rejected due to Petitioner's failure to follow the requirement of providing copies of prior remedies. Petitioner was again given an opportunity to cure the defect.

• On September 3, 2013, Petitioner again resubmitted her appeal remedy which was entered as 703515-A4 and was rejected because she again failed to include a copy of her BP-9 and the response.  Petitioner was again given an opportunity to cure the defect, and on October 17, 2013, remedy 703515-A5 was received and again rejected because she failed to submit a copy of her BP-9. She was again given another opportunity to cure the defect, but never re-submitted her paperwork. Accordingly, Petitioner did not properly file her administrative remedies, and therefore has not exhausted.

8.  With respect to the allegations raised by inmate Johnson regarding her sentence computation she has not exhausted her administrative remedies.

ECF No. 7-2 at 1-3.

It thus appears that Petitioner Johnson attempted to exhaust her administrative remedies but did not pursue the process to its proper conclusion.  Regardless, the Eleventh Circuit Court of Appeals has recently held, in <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015), that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect, overruling its earlier decision in <u>Gonzalez v. United States</u>, 959 F.2d 211 (11th Cir. 1992), relied on by Respondent.  The court explained that exhaustion of administrative remains a requirement, "it's just not a jurisdictional one."  <u>Santiago-Lugo</u>, 785 F.3d at 475.

> What its non-jurisdictional nature means is that a court need not inquire into exhaustion on its own.  A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted.  And because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.

*Id.* at 475 (citations omitted).

On the merits, Petitioner Johnson is not entitled to relief.  A federal prison sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence

service of sentence at, the official detention facility at which the sentence is

to be served."  18 U.S.C. § 3585(a).  Further,

> **Credit for prior custody**. – A defendant shall be given credit
> toward the service of a term of imprisonment for any time he
> has spent in official detention prior to the date the sentence
> commences –
>
> (1) as a result of the offense for which the sentence was
> imposed; or
>
> (2) as a result of any other charge for which the defendant was
> arrested after the commission of the offense for which the
> sentence was imposed;
>
> *that has not been credited against another sentence.*

*Id.* § 3585(b) (emphasis added).

Respondent has attached the Declaration of Kellen Jean Goulet,

Correctional Programs Specialist, Designations and Sentence Computation

Center, Federal BOP.  ECF No. 7-1.  In the declaration, Goulet states that

Johnson's federal sentence has been computed in accordance with federal

statute and BOP policy.  *Id.* at 1.  Specifically,

> 3.  My review of the Pre-sentence Investigation Report revealed
> that on May 21, 2010, Petitioner while on bond from Richmond
> County (Georgia) Sheriff's Department (RCS[D]), was arrested
> by South Carolina state authorities for related conduct which
> occurred in Richmond County, Georgia (Theft by Deception),
> Criminal Docket Number: 08RCCR1059, and was not released

on bond.  On May 24, 2010, Petitioner was transferred to the custody of the RSCD.

4.  On May 4, 2011, Petitioner was borrowed via a writ by the United States Marshals Service (USMS) for the purpose of sentencing.  On August 31, 2011, Petitioner was sentenced in the United States District Court, Southern District of Georgia, Augusta Division, Criminal Docket Number: CR111-00136-001, to a 144-month term of incarceration for Wire Fraud.  The federal sentence was silent regarding its position on the state sentence.  See Attachment 1, Judgment and Commitment Order CR111-00136-001).

5.  On September 1, 2011, Petitioner was committed to the Georgia Department of Corrections (GDOC) to serve her state sentence.

6.  Upon completion of her State of Georgia sentence, Petitioner was transferred to exclusive federal custody on June 28, 2012, for service of her federal sentence.

7.  Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and Title 18 U.S.C. § 3585(b), preclude the application of credit for time that has been credited against another sentence.  Petitioner is seeking credit from May 21, 2010 through June 22, 2012.  During this time period, Petitioner was in the primary custody of state authorities, and none of that time is creditable to her federal sentence under the provision of § 3585(b).  See Attachment 2, BOP Program Statement 5880.28, pages 1-12 and 1-14.

8.  The Bureau has prepared a sentence computation for Petitioner based on a 144-month term of incarceration beginning June 28, 2012, with jail credit from June 11, 2008, through June 14, 2008 (which stems from credit for a prior case).  Based on this calculation, Petitioner is currently scheduled for release from Bureau custody, via Good Conduct

Time Release, on December 7, 2022.  See Attachment 3,
Sentence Monitoring Computation Data.

9.  Petitioner was in the primary custody of state authorities and
in the service of a state sentence during the period of time she
is seeking as credit.  Federal statute and Bureau policy prohibit
the application of credit for this time.

*Id.* at 1-2.

As Goulet's declaration indicates, Johnson's federal judgment and

sentence is silent regarding her state sentence.  *See* ECF No. 7-1 at 4-10.

In a subsequent letter, however, the sentencing judge specifically stated it

was his "unequivocal intention that this federal sentence be served

consecutive to any other State sentence."  ECF No. 13-1 at 10.

Johnson began serving her federal sentence on June 28, 2012.  *See*

ECF No. 7-1 at 2 and 16; ECF No. 13 at 3 and 13-1.  Further, as Goulet

indicates, during the time period for which Johnson seeks credit on her

federal sentence, Johnson was in the custody of state authorities, serving

her state sentence, and 18 U.S.C. § 3584(a) and Program Statement

5880.28 preclude application of credit for time that has been credited

against another sentence.  *See* Butler v. Warden, FCC Coleman- Medium,

451 F. App'x 811 (11th Cir. 2011) (explaining that "when the federal

government takes possession of a state prisoner pursuant to a writ of

habeas corpus *ad prosequendum*, the state's custody is not interrupted,

and thus the prisoner's federal sentence does not begin to run until he is

turned over to federal authorities after having served his state sentence");

Scruggs v. Adkinson, 423 F. App'x 858 (11th Cir. 2011) ("Because the

language of § 3585(b) is clear, we must give effect to the unambiguously

expressed intent of Congress to prevent a defendant from receiving a prior

custody credit for time that has been credited against another sentence.").

Petitioner Johnson has not shown the BOP abused its discretion in

computing her federal sentence.  Therefore, she is not entitled to federal

habeas relief and her § 2241 petition should be denied.

## Conclusion

For the reasons set forth above, it is respectfully **RECOMMENDED**

that the petition for writ of habeas corpus filed by Melisha Johnson under

28 U.S.C. § 2241 (ECF No. 1) be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 28, 2015.

**S/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

   **Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**